# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | | |
|---|---|---|
| **DAMON SCOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CAUSE NO. 3:21-CV-141-DJH** |
| | ) | |
| **HAIER U.S. APPLIANCE** | ) | |
| **SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

### I. NATURE OF THE CASE

1.      Plaintiff, Damon Scott ("Scott"), by counsel, brings this action against Defendant, Haier U.S. Appliance Solutions, Inc., ("Haier") alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Kentucky Civil Rights Act ("KCRA").

### II. PARTIES

2.      Scott is a resident of Jefferson County, Kentucky which is within the geographical boundaries of the Western District of Kentucky.

3.      Defendant is a business entity that maintains offices and conducts operations within the geographical boundaries of the Western District of Kentucky.

### III. JURISDICTION AND VENUE

4.      Jurisdiction is conferred on this Court over the subject matter of this litigation

pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 28 U.S.C. §1367, and 42 U.S.C. §2000e-5(f)(3).

5.      Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b) and KRS

344.030(2).

6.      Scott was an "employee" as that term is defined by 42 U.S.C. §2000e(f) and KRS

344.030(5).

7.      A substantial part of the events, transactions, and occurrences relevant to this

lawsuit arose within the geographical environs of the Western District of Kentucky; thus,

venue is proper in this Court.

8.      Scott satisfied his obligation to exhaust his administrative remedies.  A Notice of

Right to Sue was issued by the EEOC on January 27, 2021 and Scott brings this original

action within ninety (90) days of receipt thereof.

### IV. FACTUAL ALLEGATIONS

9.      Scott, who is African American, was hired as a Production Worker by Defendant

in August of 2014. Scott was promoted to Team Leader in October of 2017.

10.     At all relevant times, Scott met or exceeded Defendant's legitimate performance

expectations and was qualified for his position. From 2014 to 2019, Scott performed his

job duties without issue and always received positive reviews.

11.     In January of 2019, Paula Hicks ("Hicks") was hired as Scott's new supervisor.

Hicks immediately began targeting and harassing Scott.

12.     Hick's main method for harassing Scott was making false accusations and write ups, alleging Scott was violating Haier's use of time policy and Personal Protective Equipment (PPE) policies. Within one (1) week in February, Hicks wrote up Scott three (3) times for false PPE violation allegations. Two (2) of these write-ups were identical and Hicks merely changed the date in order to punish Scott again.

13.     Although Scott always wore the proper PPE, Caucasian employees would fail to wear proper PPE on a regular basis and would not be punished by Hicks. Scott addressed this disparate treatment multiple times with his Union Representative and Defendant's Human Resources Department. No action was taken.

14.     As a result of Hick's harassment, Scott was suspended without pay from March 3 to March 7, 2019.

15.     On or around March 14, 2019, Scott filed a Charge of Discrimination with the EEOC.

16.     Thereafter, Hicks's harassment escalated when she issued a Notice of Termination to Scott on April 16, 2019. After working with the Union and Defendant's Human Resources Department, Scott was ultimately allowed to keep his job. Hicks stopped targeting Scott for the remainder of 2019.

17.     In November of 2019, Scott filed a lawsuit against Haier bringing claims of discrimination and retaliation in violation of Title VII and the KCRA.

18.     In January of 2020, Hicks once again began harassing Scott by writing him up for false PPE violation allegations.

19.     On or around February 19, 2020, Hicks issued a second Notice of Termination to Scott.

20.     Scott again attempted to seek help from the Union and Defendant's Human Resources Department. However, Scott was informed that the second Notice of Termination would be fatal to his employment.

21.     In order to avoid the imminent termination, Scott was forced to resign and was constructively discharged from his employment on March 9, 2020.

22.     Similarly situated Caucasian employees and those who have not engaged in protected activity were treated more favorably than Scott.

23.     The reasons given for constructively discharging Scott are pretext.

## V.   CAUSES OF ACTION

### COUNT I – TITLE VII – RACIAL DISCRIMINATION

24.     Scott hereby incorporates paragraphs one (1) through twenty-three (23) of his Complaint.

25.     Scott was a member of a protected class based on his race.

26.     Scott was well qualified for his job. This is evidenced by the fact that he worked for Haier for nearly five (5) years without issue.

27.     Scott suffered an adverse employment decision. Specifically, he was constructively discharged on or around March 9, 2020.

28.     Similarly situated white employees were treated more favorably.

29.     Defendant discriminated against Scott by subjecting him to different standards and unlawfully terminating his employment based on his race.

30.     Defendant's actions were intentional, willful, and taken in reckless disregard of Scott's legal rights.

31.     Defendant's unlawful actions have violated Scott's rights as protected by Title VII.

32.     Scott suffered damages as a result of Defendant's unlawful actions.

### COUNT II – TITLE VII – RETALIATION

33.     Scott hereby incorporates paragraphs one (1) through thirty-three (33) of his Complaint.

34.     Scott engaged in activity protected by Title VII. Scott filed an official complaint of discrimination and retaliation in November of 2019.

35.     Scott's exercise of protected rights was known by Defendant. Haier was served with a copy of Scott's Complaint.

36.     Defendant took an adverse employment action against Scott. Scott was written up multiple times and put up for termination on February 19, 2020.

37.     Defendant retaliated against Scott by constructively discharging employment.

38.     Defendant's actions were intentional, willful, and taken in reckless disregard of

Scott's legal rights.

39.    Defendant's unlawful actions have violated Scott's rights as protected by Title VII.

40.    Scott suffered damages as a result of Defendant's unlawful actions.

### COUNT III – KCRA – RACIAL DISCRIMINATION

41.    Scott hereby incorporates paragraphs one (1) through forty-one (41) of his

Complaint.

42.    Scott was a member of a protected class based on his race.

43.    Scott was well qualified for his job. This is evidenced by the fact that he worked

for Haier for nearly five (5) years without issue.

44.    Scott suffered an adverse employment decision. Specifically, he was

constructively discharged on or around March 9, 2020.

45.    Similarly situated white employees were treated more favorably.

46.    Defendant discriminated against Scott by subjecting him to different standards

and unlawfully terminating his employment based on his race.

47.    Defendant's actions were intentional, willful, and taken in reckless disregard of

Scott's legal rights.

48.    Defendant's unlawful actions have violated Scott's rights as protected by the

KCRA.

49.    Scott suffered damages as a result of Defendant's unlawful actions.

<u>COUNT IV – KCRA – RETALIATION</u>

50.      Scott hereby incorporates paragraphs one (1) through fifty (50) of his Complaint.

51.      Scott engaged in activity protected by the KCRA. Scott filed an official complaint of discrimination and retaliation in November of 2019.

52.      Scott's exercise of protected rights was known by Defendant. Haier was served with a copy of Scott's Complaint.

53.      Defendant took an adverse employment action against Scott. Scott was written up multiple times and put up for termination on February 19, 2020.

54.      Defendant retaliated against Scott by constructively discharging employment.

55.      Defendant's actions were intentional, willful, and taken in reckless disregard of Scott's legal rights.

56.      Defendant's unlawful actions have violated Scott's rights as protected by the KCRA.

57.      Scott suffered damages as a result of Defendant's unlawful actions.

## VI. <u>REQUESTED RELIEF</u>

WHEREFORE, Plaintiff, Damon Scott, respectfully requests that this Court enter judgment in his favor and award him the following relief:

1.      All wages, benefits, compensation, and other monetary loss suffered as a result of Defendants' unlawful actions;

2.      Enjoin Defendant from discriminating and/or retaliating against anyone else based on their race;

3.      Award compensation for any and all other damages suffered as a consequence of

Defendants' unlawful actions;

5.      Award compensatory damages under Title VII and the KCRA;

6.      Award punitive damages under Title VII;

7.      Award all costs and attorney's fees incurred as a result of bringing this action;

8.      Award pre- and post-judgment interest on all sums recoverable; and

9.      All other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC
By: _/s/ *Devan A. Dannelly*
Devan A. Dannelly, KBA 98470
101 North 7th Street, Ste. 603
Louisville, KY 40202
Telephone:  (502) 561-3484
Facsimile:   (812) 424-1005
Email: ddannelly@bdlegal.com
*Attorney for Plaintiff*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, Damon Scott, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC
By:  /s/ *Devan A. Dannelly*
Devan A. Dannelly, KBA 98470
101 North 7th Street, Ste. 603
Louisville, KY 40202
Telephone:  (502) 561-3484
Facsimile:   (812) 424-1005
Email: ddannelly@bdlegal.com
*Attorney for Plaintiff*