UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| DAMON SCOTT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    CAUSE NO. 3:21-CV-141-BJB-RSE |
| | ) |
| HAIER U.S. APPLIANCE | ) |
| SOLUTIONS, INC., | ) |
| | ) |
|     Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Damon Scott (Plaintiff or Scott), by counsel, hereby responds in opposition to Defendant's, Haier U.S. Appliance Solutions, Inc. (Defendant or Haier), Motion to Dismiss.

**STATEMENT OF MATERIAL FACTS**

Plaintiff currently has two (2) cases filed against his former employer, Haier. The first was filed in November of 2019 (*Scott v. Haier U.S. Appliance Solutions, Inc.*, Case No. 3:19-CV-844-CRS-CHL), while Scott was still employed by Haier. In that action, Scott alleges two (2) claims of race discrimination and retaliation in violation of both Title VII of the Civil Rights Act of 1964 (Title VII) and the Kentucky Civil Rights Act (KCRA) ("2019 case"). Scott, who is African American began working for Haier in 2014 and was promoted in 2017. From 2014 to 2019, Scott performed his job duties without issue. In January of 2019, Paula Hicks (Hicks) was hired to be Scott's new supervisor. Immediately, Hicks began targeting Scott. Hicks routinely falsely accused and wrote up Scott for alleged Personal Protective Equipment (PPE) policy violations. Meanwhile, Caucasian employees were permitted to violate the PPE policy without punishment.

Hicks continued her discriminatory treatment of Scott to the point that he was suspended in March of 2019. Scott, in an attempt to protect himself, reported Hick's conduct to the Equal Employment Opportunity Commission (EEOC) on March 14, 2019. All allegations contained in that EEOC Charge occurred prior to March 14, 2019. Then, after receiving notice of the EEOC Charge, Hicks retaliated against Scott by writing him up again and putting him up for termination on April 16, 2019. After a hearing with Haier's Human Resources (HR), Scott was ultimately allowed to keep his job. After the EEOC investigation concluded, Scott filed his above-referenced case in the Western District of Kentucky on November 18, 2019. All allegations at issue in that case occurred prior to April of 2019.

Plaintiff's second case is this action, which was filed <u>after</u> Scott was constructively discharged in March of 2020. In this action, Scott again alleges two violations of Title VII and the KCRA ("2021 case"). While the allegations in this case are very similar to the allegations in Plaintiff's 2019 action, each case arises out of two separate sets of facts, occurring roughly twelve (12) months apart. While Plaintiff does reference the facts that are the basis of the 2019 action, the events that took place <u>after</u> Scott's 2019 case was filed form the basis of this case.

Following the hearing with HR, Hicks seemed to finally stop harassing Scott. Scott was not written up and had no performance issues from April of 2019 to January of 2020. Then, in January of 2020, Hicks once again began harassing Scott. Once again, Hicks wrote up Scott for falsified PPE policy violations. On February 19, 2020, Hicks issued a second Notice of Termination to Scott. After contacting his Union and HR, Scott was informed that the second Notice of Termination would be fatal to his employment. In order to avoid the imminent termination, Scott was forced to resign and was constructively discharged from Haier on March 9, 2020.

Following his constructive discharge, Scott filed a new EEOC Charge, with the new facts and violations occurring in 2020. On January 12, 2021, a Settlement Conference was held before Magistrate Judge Lindsay, where the Parties attempted to settle and resolve all claims, including those alleged in this 2021 case. After the Parties' attempts at settlement were unsuccessful, Plaintiff's Counsel contacted Defendant's Counsel to inquire as to whether Defendant had any objection to Plaintiff filing an Amended Complaint with the new allegations arising from the 2020 constructive discharge. **Exhibit A**, 1/22/21 Email to Robert Rives. On January 27, 2021, the EEOC issued a Notice of Right to Sue to Scott, allowing him to file his new claims in Federal Court. **Exhibit B**, EEOC NRTS. On February 2, 2021, Defendant's Counsel responded to Plaintiff's counsel, stating that Defendant "cannot agree to the filing of an amended complaint". **Exhibit C**, 2/2/21 Email from Robert Rives. Defendant was well aware of this case and the new allegations prior to filing any dispositive motion in the 2019 case. Plaintiff's Counsel then informed Defendant that a new Complaint would be filed. On March 3, 2021, Scott filed the Complaint which created this case.

## ARGUMENT

Scott has two cases currently filed against Haier. However, Haier now asks the Court to dismiss this action, alleging claim-splitting and duplicative actions. For the following reasons, Plaintiff asks the Court to deny Defendant's Motion.

### I.  This Action is not Duplicative of Scott's 2019 Case:

On its face, the facts that lead to the filing of this case are not duplicative of the facts that form the basis of the 2019 case. The key facts supporting Scott's 2021 claims all took place after Scott's 2019 case was filed. While the facts from 2019 are relevant to Scott's 2021 lawsuit, the claim itself was not ripe until March 9, 2020, when Scott was constructively discharged. Then,

given the new claims and new facts, Scott was required to exhaust his administrative remedies by filing with the EEOC prior to filing in Federal Court.

The EEOC issued the Notice of Right to Sue on January 27, 2021. By that time, the deadline to amend pleadings in the 2019 case had long passed, discovery had concluded, a settlement conference had taken place, and Defendant was preparing to file their Summary Judgment Motion. Filing an amended complaint to include the 2020 constructive discharge claims would essentially equate to opening an entirely new case, as additional discovery would be needed. Thus, it is highly unlikely that the Court would grant leave to for Plaintiff to file an amended complaint so late into litigation, especially with Defendant opposing the filing. Plaintiff did attempt to get Defendant to agree to filing an Amended Complaint, but Defendant refused and instead, opted for Plaintiff to file this entirely new case.

The Sixth (6th) Circuit Court of Appeals recently addressed a case with a very similar timeline of events. The 6th Circuit ultimately held that the doctrines of claim-splitting and duplicative litigation "all come with a caveat: they "do not apply to claims that were not ripe at the time of the first suit."" *Waad v. Farmers Insurance Exchange*, 762 Fed.Appx. 256 (6th Cir. 2019) (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006)). In *Waad*, the plaintiff, Waad, owned and operated an auto collision repair company. *Id.* The Defendant, Farmers Insurance Exchange (Farmers), accused Waad of committing insurance fraud by falsely submitting receipts for work that was not performed to the insurance company. *Id.* Farmers reported the allegations to law enforcement and an investigation and charges followed. *Id.* In 2013, Waad filed a complaint against Farmers, and others, stating several state law claims and a claim of racial discrimination ("2013 case"). *Id.* Each of these claims arose from Farmers's alleged malicious investigation and prosecution of Waad and his company.

Then, in 2015, all charges were quashed against Waad due to a lack of probable cause. *Id*. Waad then filed a second lawsuit in 2016 against Farmers, again alleging both state and federal law claims and malicious prosecution ("2016 case").[1] *Id*. Again, each of these claims arose from Farmer's alleged malicious investigation and prosecution of Waad and his company. Farmers filed a motion to dismiss the 2016 and 2017 cases, making the same claim-splitting and duplicative litigation arguments that Defendant makes in this matter. Initially, the district court agreed with Haier's analysis, stating that both the 2013 and 2016 cases were based on the same set of allegations (the 2013 investigation), that Waad should have sought leave to amend his complaint from the 2013 case to include the allegations from the 2016 case, and that by failing to do so, Waad engaged in improper claim-splitting. *Id*.

On appeal to the 6th Circuit, the Court held that the 2016 case was not duplicative of the 2013 case. *Id*. The Court held, "[T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id*. (citing *Katz v. Gerardi*, 655 F.3d 1212 (10th Cir. 2011)). Applying this test, the 6th Circuit determined that the earliest possible date that Waad's 2016 case would have been ripe for litigation, was upon the dismissal of his charges in March of 2015. *Id*. The Court admitted that Waad could have sought leave to amend his 2013 complaint to include the 2016 case allegations, but held that Waad was not required to do so. The Court held, ""[A]n action need include only the portions of the claim due at the time of commencing that action," so "the opportunity to file a supplemental complaint is not an obligation."" *Id*. (citing *Rawe*, *Supra*.).

Much like the timeline of events in *Waad*, Scott initially filed his 2019 case based on the write ups, suspension, and first notice of termination that he received prior to November of 2019.

---

[1] There was also a third (3rd) lawsuit filed by Waad against Famers in 2017, but it is irrelevant to this analysis.

As of the date of Scott's 2019 complaint, it had been six (6) months since Hicks took action against Scott and Plaintiff had not been constructively discharged. It was not until Scott was constructively discharged on March 9, 2020 that his constructive discharge and associated discrimination and retaliation claims became ripe for litigation. Scott then went through the administrative process and received his Notice of Right to Sue from the EEOC on January 27, 2021. While Plaintiff could have sought leave to amend his complaint at that time (and did inquire about it with Defendant), Plaintiff had no obligation to amend his complaint to include events and claims that occurred after the date of the initial complaint filing. Even if a final judgement were to be entered in the 2019 case, Scott's claims arising from the 2020 constructive discharge would not be precluded.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's Motion. Scott's 2019 and 2021 cases arise from different sets of events, occurring approximately a year apart. At the time Scott filed his 2019 case, the 2021 case was not ripe for litigation. Scott not only alleges different facts in the 2021 case, but an entirely different claim of constructive discharge as well. This is in no way duplicative litigation or claim-splitting. Accordingly, Plaintiffs asks the Court to deny Defendant's Motion to Dismiss.

Respectfully submitted,

/s/ *Devan A. Dannelly*
Devan A. Dannelly
Biesecker Dutkanych & Macer, LLC
101 N. Seventh Street
Louisville, KY 40202
Telephone: (502) 561-3484
Fax: (812) 424-1005
ddannelly@bdlegal.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 27th day of May 2021, I electronically filed this document through the ECF system, which will send a notice of electronic filing to all counsel of record. A copy of this filing has also been sent via electronic mail to the following addresses:

      Kathryn A. Quesenberry
Robert C. Rives, IV
Matthew Barszcz
Chase M. Cunningham
DINSMORE & SHOHL LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
Telephone: (502) 581-8000
Facsimile: (502) 581-8111
kathryn.quesenberry@dinsmore.com
robert.rives@dinsmore.com
matthew.barszcz@dinsmore.com
chase.cunningham@dinsmore.com
*Counsel for Defendant*

      */s/ Devan A. Dannelly*
      Devan A. Dannelly