UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**Damon Scott,**                                                                                  **Plaintiff**

v.                                                                                  No. 3:21-cv-141-BJB-RSE

**Haier US Appliance**                                                                                  **Defendant**
**Solutions, Inc.,**

## OPINION & ORDER

Damon Scott sued his employer, Haier US Appliance Solutions, Inc., because he says it discriminated and retaliated against him on the basis of race. *Scott v. Haier US Appliance Solutions, Inc.*, No. 3:19-cv-844 (W.D. Ky.). While *Scott I* was pending, Scott resigned from the company, claimed the company effectively forced him to, characterized this resignation as "constructive discharge," and filed this second suit. *Scott v. Haier US Appliance Solutions, Inc.*, No. 3-21-cv-141 (W.D. Ky.). *Scott II* alleges the same claims, against the same defendant, for the same conduct that *Scott I* addressed.

Meanwhile, the parties actively litigated *Scott I* through discovery to summary judgment, eventually entered in favor of Haier. 2021 WL 2587163, at *10. The decision concluded that Scott lacked evidence that: (1) his disciplinary sanctions amounted to an adverse action; (2) Haier treated similarly situated employees differently than Scott; (3) and Haier decisionmakers knew about Scott's complaints before disciplining him.

Because Scott would have to contradict those rulings from *Scott I* in order to prevail in *Scott II*, the Court grants Haier's motion to dismiss this lawsuit. And regardless of preclusion, the *Scott II* complaint fails to plead facts supporting a plausible claim of discrimination or retaliation, so the Court would dismiss the complaint in any event.

### I.   Litigation History

Scott's 2019 suit against Haier alleged discrimination based on four warning notices Scott received for failing to wear appropriate personal protective equipment and abide by company policies. *See* Complaint (DN 1-1 ¶¶ 10–19); Damon Scott Deposition (DN 22-2 at 155, 161–62, 182).[1] Under those policies, a fourth warning notice carried an automatic termination recommendation. *See* Scott Deposition at

---

[1] All citations to docket entries refer to *Scott I*, 3:19-cv-844, unless otherwise noted with a reference to *Scott II*.

182:25-183:3, 191–92. Following the fourth warning, however, Haier's human resources manager decided not to fire him, overriding a recommendation of termination from Scott's supervisor. Warning Notice (DN 22-5 at 2) (May 17, 2019). Upon learning of the termination recommendation, Scott filed a charge of discrimination with the EEOC, alleging discrimination based on race and sex, as well as retaliation for filing the EEOC complaint. First EEOC Charge (DN 23-4) (Mar. 14, 2019). Two months later, Scott's lawyer filed a second charge of discrimination with the EEOC, and the EEOC granted him a notice of a right to sue. Second EEOC Charge (DN 25-2) (May 7, 2019); *see* Scott Deposition at 206–07. Then, in November 2019, Scott filed his first suit in U.S. District Court, based on racial discrimination and retaliation (dropping the EEOC charge's additional sex-discrimination claim), Complaint ¶¶ 20–29, and the parties commenced discovery in *Scott I*.

Scott claims that Haier's mistreatment ceased in 2019, shortly after he filed *Scott I*, but resumed two months later in January 2020. *See Scott II* Complaint ¶¶ 18–19. At that point, the company issued him a fifth warning notice after he failed to wear company-required personal-protective equipment in a secure area. Scott Deposition at 271–72; *Scott II* Complaint (DN 1) ¶¶ 18–23. Company policy made termination mandatory after a fifth warning. Scott Deposition at 272–73. Scott resigned in March 2020 to avoid (he says) being terminated after the imposition of his fifth-and-final warning notice. *Id.* at 272.

So Scott filed this second suit, alleging the same facts discussed in the first case: the imposition of four warning notices and the first termination recommendation. *Scott II* also added some allegations about events that occurred after he filed the first case: the imposition of the fifth warning notice and his resignation, which he styles as a "constructive discharge."

Scott sat for his deposition in the first case in October 2020. He testified about some events (his fifth warning and resignation), which he hadn't pled in *Scott I*—because they hadn't happened yet when he filed that suit—but which did appear in the *Scott II* complaint. Scott Deposition at 191–92, 237, 262, 272. The parties discussed the fifth warning notice, its import, and the events leading up to it. Scott admitted the company never threatened his employment, demoted him, decreased his pay, or altered his job responsibilities. *Id.* at 110, 191–92, 237, 255, 262. And Scott described his resignation as voluntary. *Id.* at 272. He also acknowledged that his supervisor was African-American, *id.* at 93:20–21, 122:23–24, and admitted that he had no documentation, evidence, or information tending to show that management treated non-African-Americans more favorably, *id.* at 116, 139–40.

Three months after his deposition, seven months after the deadline for amending the pleadings in *Scott I*, and nine months after his resignation, Scott sought permission from opposing counsel to amend his complaint to add the constructive-discharge claim. *See Scott II* Response to Motion to Dismiss (DN 11-1)

(Jan. 22, 2021). Scott's lawyer emailed Haier's counsel to ask whether Haier would object to the amendment. *See id.* Haier objected. *Scott II*, DN 11-3 (Feb. 2, 2021). The company explained that the late amendment would violate the Court's order, create inefficiency, and impose costs because discovery had closed and the motion for summary judgment had been drafted. *See id.* Following Haier's decision not to consent, Scott never filed a motion asking Judge Simpson to amend his complaint in *Scott I*.

Two weeks later, Haier moved for summary judgment. DN 22. The brief in support highlighted Scott's deposition testimony discussing the fifth warning notice, his resignation, and his failure to identify any disparate treatment. *See* DN 22-1 at 2, 9–10, 13, 16, 21–22. In response, Scott filed an opposition brief and attached his entire deposition transcript. DN 23-1.

Relying on the deposition testimony offered by Scott and other evidence offered by Haier, Judge Simpson granted the motion for summary judgment. The opinion addressed both the facts as pled and the facts uncovered during discovery. *Scott I* Opinion (DN 27). As to discrimination, the Court held that Scott could not prove an adverse employment action because he admitted that he voluntarily resigned and lacked any evidence that Haier treated similarly situated non-African-American colleagues more favorably than it had treated Scott. *See* Op. at 11. And as to retaliation, the Court determined that Scott failed to show that he suffered an adverse employment action, that the Company imposed the warning notices in retaliation for Scott's protected conduct (of filing an EEOC charge), or that "there was a close temporal proximity between the fifth warning notice and Scott's protected activity" sufficient to infer causation. Op. at 19–20 n.9.

Haier moved to dismiss this suit before the decision in *Scott I* on claim-splitting grounds. *See* First Motion to Dismiss (DN 8) at 3 (citing *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019)). After the *Scott I* decision came down, Haier filed a second motion to dismiss this case as precluded by Judge Simpson's dismissal. *See* Second Motion to Dismiss (DN 14) at 3 (citing *Pogue v. Principal Life Ins. Co.*, 979 F.3d 534, 536 (6th Cir. 2020)).

## II. Issue Preclusion

The doctrine of issue preclusion is an equitable doctrine, long recognized as part of federal common law, that "bars parties from relitigating any issue 'essential to [a] prior judgment' that was 'actually litigated and resolved in a valid court determination.'" *Pogue*, 979 F.3d at 536; *see also Arangure v. Whitaker*, 911 F.3d 333, 337 (6th Cir. 2018) (describing the "common-law principle" of res judicata). "Once a court has decided an issue," the Sixth Circuit has recognized, "it is forever settled as between the parties." *Heartland Materials v Warren Paving*, 819 F. App'x 323, 326 (6th Cir. 2020) (quotation omitted). And "[w]hen an issue of fact or law is actually

litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009) (quoting Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982)).

Issue preclusion forecloses relitigation of an issue that is common to different lawsuits if four elements are met: "(1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* at 589–90 (6th Cir. 2009) (emphasis omitted).

The doctrine serves important interests of courts and litigants alike. It protects the finality of judgments by preventing "parties from relitigating the same disagreement in perpetuity." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021). And it "prevents inconsistent decisions, encourages reliance on adjudication by minimizing the possibility of inconsistent decisions, and conserves judicial resources." 18 MOORE'S FEDERAL PRACTICE § 132.01[2] (3d ed. 2021).

The upshot? A plaintiff files duplicative cases "at the peril that the adjudication of one case will have preclusive effect on the other." *Twaddle v. Diem*, 200 F. App'x 435, 439 (6th Cir. 2006).

### A. *Issue Raised and Actually Litigated*

An issue "raised and actually litigated" in the first case, *Cobbins* 566 F.3d at 589, must be identical to an issue presented in the second case for issue preclusion to apply, *Kaufman v. BDO Seidman*, 984 F.2d 182, 184 n.5 (6th Cir. 1993). The Sixth Circuit has looked to the Restatement of Judgments to determine whether two cases present an issue in common. *See Gilbert v. Ferry*, 413 F.3d 578, 581 (6th Cir. 2005) (per curiam) (citing R.2d. § 27 cmt. c); *Pram Nguyen ex rel. United States v. City of Cleveland*, 534 F. App'x 445, 449, (6th Cir. 2013) (same); *Heartland Materials*, 819 F. App'x at 330–31 (Moore, J., dissenting) (same).

Under the Restatement (§ 27 cmt. c), a court must consider whether:

(1) the evidence or argument advanced in the two proceedings overlaps substantially;

(2) the new evidence or argument implicates the same rule of law;

(3) pretrial discovery could be expected to embrace the matter presented in both cases; and

(4) the claims are closely related.

All four prongs are satisfied with respect to no fewer than three different factual issues common to Scott's lawsuits: adverse action, disparate treatment, and causation.

Scott's claims of discrimination and retaliation[2] both require him to prove that Haier took an adverse employment action against him and treated him less favorably than non-African-Americans.[3] The retaliation claim further required that Scott prove a "causal connection" between the adverse employment action and the protected activity taken by Scott—here, his filing of a discrimination complaint with the EEOC.[4]

*First*, the evidence and arguments raised in *Scott I* substantially—and perhaps uniformly—overlap with those reurged here in *Scott II*. Both cases implicate the same employment relationship, the same allegedly discriminatory warning notices, and the same alleged desire to retaliate against Scott for his EEOC filings. *Compare Scott I* Complaint (DN 1) ¶ 1, *with Scott II* Complaint (DN 1) ¶ 1. And Judge Simpson's decision carefully considered the allegations and discovery material in dispensing with Scott's claims. "[N]o adverse employment action was taken by Haier," it explained, "following Scott's receipt of a *fifth warning notice* within a twelve-month period considering that he *voluntarily resigned* 'because he felt [like] the termination was coming.'" Op. at 11 (quoting Scott Deposition at 272) (emphasis added)). And as to disparate treatment, Scott "could not provide any names or information about Caucasian employees that he believed avoided discipline for the same conduct that formed the basis of his warning notices." Op. at 12 (quoting Scott Deposition at 139)). Even if the fifth-warning notice were an adverse action,

---

[2] Scott asserts his claims under both Title VII, 42 U.S.C. § 2000e-3(a), and the Kentucky Civil Rights Act, KRS § 344.040. But because the "Kentucky statute is virtually identical to the corresponding section of the U.S. civil rights act," *Kentucky Commission on Human Rights v. Kentucky*, 586 S.W.2d 270, 271 (Ky. Ct. App. 1979), courts "use the federal standards" for claims brought under either statutory scheme, *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000).

[3] The elements of a Title VII discrimination claim are: "(1) he is a member of a protected class; (2) was qualified for the job; (3) he *suffered an adverse employment decision*; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (emphasis added).

[4] The elements of a Title VII retaliation claim are: "(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an *adverse employment action was subsequently taken* against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008).

moreover, the Court confronted "a complete absence of evidence that any similarly situated employee was treated differently or that there was a close temporal proximity between the *fifth warning notice* and Scott's protected activity." Op at 19–20 n. 9 (emphasis added). Plainly, the discovery, arguments, and rulings in *Scott I* did not stop at the fourth warning.

True, the *complaint* in *Scott I* did not allege all the facts that Scott now says distinguish his second suit. Those pleadings did not address the imposition of a fifth-and-final warning notice, the second termination recommendation, or Scott's ultimate resignation. *Scott II* Complaint ¶¶ 18–21. But that is not dispositive. Those facts *were* raised and litigated in the first case, which is the relevant question under preclusion precedent. *See, e.g.*, R.2d Judgments § 27 cmt. d. ("When an issue is property raised, *by the pleadings or otherwise*, and is submitted for determination, and is determined, the issue is actually litigated"); *In re Bursack*, 65 F.3d 51, 54 (6th Cir. 1995) (issues "actually litigated" because they were the subject of discovery, depositions, and procedural tussling before final judgment); *cf.* Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.").[5]

Scott discussed the fifth warning notice, Scott Deposition at 271–72, the conditions of his resignation, *id.* at 272, and whether Haier treated non-African-American colleagues more favorably, *id.* at 135–138, 147. Haier's motion for summary judgment relied on that testimony to argue a non-discriminatory reason for recommending termination, Motion (DN 22-1) at 9, 22, no "adverse employment action," *id.* at 10, 19, 22, Scott's admission that he could not "point to any Team Leaders [] treated more favorably," *id.* at 16, and no temporal or causal relationship between the EEOC filing and fifth warning, *id.* at 19, 22. Scott's brief, moreover, attached his deposition testimony, which covered all this ground. *See* DN 23-2. And the Court considered it, as was appropriate under Rule 56(c)(1). *See* Op. at 10, 19–20 n.9.

---

[5] *See also Cox v. TVA*, 16 F.3d 1218, *4 (6th Cir. 1994) (unpublished) (first preclusion prong turns on whether factual issues were "raised and decided in prior *actions*") (emphasis added); *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 601 (6th Cir. 2012) (asking whether an issue was raised and then litigated anytime prior to a final judgment), *abrogated on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014); *McFarland Dewey Sec. Co. v. Am. Metals Indust.*, No. 5:13-cv-44, 2014 WL 2993088 at *3 (E.D. Ky. July 2, 2014) (finding "issues were actually litigated and determined based on extensive discovery" performed in the first action, which raised issues relevant to the second); *Troutt v. Colo. W. Ins. Co.*, 246 F.3d 1150, 1158 (9th Cir. 2001) ("[T]he issue has to have been effectively raised in the pleadings *or through development of the evidence and argument* at trial or *on motion*."); *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 430 F.2d 38, 45 (5th Cir. 1970) (considering issues "submitted by the parties in their pleadings," *or* those "drawn into controversy by them in the course of the evidence," as sufficient to preclude relitigation); 18 MOORE'S FEDERAL PRACTICE § 132.03[2][a] ("Usually an express finding in a valid judgment is enough to satisfy th[e] [actually-litigated] requirement.").

The other prongs of the Restatement's test are also met here.

*Second*, each proceeding implicates the same rule of law. To proceed on the discrimination claims in *Scott I* and *II*, Scott must show "(1) he is a member of a protected class; (2) was qualified for the job; (3) he suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). And to prevail on the retaliation claims in *Scott I* and *II*, he must show "(1) he … engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against [him], and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008).

*Third*, as discussed above, the pretrial discovery conducted in *Scott I* did in fact embrace the matter sought to be presented in this second action—namely, the circumstances leading to Scott's alleged "constructive discharge" and his knowledge about his inequitable treatment. Scott Deposition at 116, 139–40, 272. *See In re Bursack*, 65 F.3d at 54; R.2d Judgments § 27 cmt. d.

*Fourth*, the claims resolved in Haier's favor in *Scott I* overlap tremendously with the claims asserted in this case. *Compare Scott I* Complaint ¶¶ 20–29, *with Scott II* Complaint ¶¶ 24–40. Importantly, as discussed above, the fifth warning notice and Scott's resignation were raised during discovery, briefed by the parties, and factored into the Court's decision to grant summary judgment. *See* Op. at 10, 19–20 n.9.

All four prongs support the Court's conclusion that the two cases raised and actually litigated the same issues regarding adverse action, disparate treatment, and knowledge.

### B. *Necessary to the Outcome*

For a former decision on an issue to have preclusive effect, it must've also been necessary to the outcome of the first case. *See Cobbins*, 566 F.3d at 589–90. A determination is necessary or essential "when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009); 18 MOORE'S FEDERAL PRACTICE § 132.03[4][a] (An issue is essential if the judgment in the prior case is "dependent on the determination made of the issue in question."); *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 501 (6th Cir. 2007) (similar).

The Court's findings in *Scott I* easily meet this standard. The Court confronted a discrimination claim and a retaliation claim. DN 1 ¶ 1. To make out both claims,

Scott needed to prove that Haier took adverse action against him, and that it did so in a discriminatory or retaliatory manner. *See Newman*, 266 F.3d at 406 (elements of discrimination claim); *Niswander*, 529 F.3d at 720 (elements of retaliation claim).

But Judge Simpson determined that "no adverse employment action was taken by Haier following Scott's receipt of a fifth warning notice within a twelve-month period considering that he voluntarily resigned 'because he felt [like] the termination was coming.'" Op. at 11 (citing DN 22-2 at 272). It *relied directly* on Scott's resignation—the very allegation Scott says distinguishes his second case—to decide he couldn't prove an adverse action.

Whether this determination was right or wrong is irrelevant to the analysis in the second case; the point is that deciding it in Scott's favor would necessarily require one judge to "reverse" (or at least flatly disagree with) another. That sort of request may be appropriate for the Court of Appeals in the first case, but it's inappropriate for another District Judge in the second. How would this Court conclude that Scott "suffered an adverse employment action" because he was "constructively discharged," *Scott II* Complaint ¶ 27, without contradicting Judge Simpson's ruling that "no adverse employment action was taken by Haier following Scott's receipt of a fifth warning notice within a twelve-month period considering that he voluntarily resigned 'because he felt [like] the termination was coming'"? Op. at 11 (quoting Scott Deposition at 272). The doctrine of issue preclusion treats the first decision as settled (at least absent appellate intervention) and bars this Court from granting the relief Scott seeks.

The same is true for causation. In the first case, Scott failed to provide any "evidence that . . . there was a close temporal proximity between the fifth warning notice and Scott's protected activity." Op. at 19–20 n.9. The law doesn't allow him a second bite at the apple. He cannot now show a causal connection between his March and May 2019 EEOC filings, on the one hand, and the imposition of the fifth warning and termination in January 2020, on the other.

Likewise for disparate treatment. The Court determined that Scott could not prevail on the discrimination claim because he presented "a complete absence of evidence that any similarly situated employee was treated differently," Op. at 19–20 n. 9, and because Scott admitted that he "could not provide any names or information about Caucasian employees that he believed avoided discipline for the same conduct that formed the basis of his warning notices," Op. at 12. This precluded a finding of discrimination or retaliation. Op. at 11–13, 18–20 & n.9. Now Scott asks this Court (or a jury) to conclude that "white employees were treated more favorably" and that Haier "subject[ed] him to different standards." *Scott II* Complaint ¶¶ 28–29. This the Court cannot do. *See Georgia-Pacific Consumer Prods. v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012).

Contrary to Scott's contention, these aspects of the decision in *Scott I* weren't dicta. These rulings were necessary to the judgement. Judge Simpson might've concluded that Scott's voluntary resignation amounted to a constructive discharge, or that evidence supported a discriminatory fifth strike, or retaliation for his EEOC charge. If so, Scott would have carried his burden and survived summary judgment. *See Elec. Workers Local 58 Pension Tr. Fund v. Gary's Elec. Servs. Co.*, 227 F.3d 646, 659 (6th Cir. 2000) (issue was necessary to the decision when an opposite ruling would have changed the outcome). *Scott I*, therefore, actually litigated and necessarily decided the fifth-strike and constructive-resignation issues.

### C. *Full and Fair Opportunity to Litigate to Final Judgment*

The last two prongs of issue preclusion concern whether the party against whom preclusion is sought had a full and fair opportunity to litigate the case, and whether the court entered final judgment. Both prongs are easily met here.

Courts considering whether a party had a full and fair opportunity to litigate an issue must review the record of the prior proceeding to ascertain whether the parties had an opportunity to address an issue in a fair and neutral forum. *See* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 4423, at 654 (3d ed. 2016) (preclusion is appropriate "unless the first court followed severely limited procedures or there is a clear and strong policy requiring independent redetermination by the second court"). "An issue that was actually litigated and was necessary to the judgment will almost always present parties with a full and fair opportunity to litigate." *In re Trost*, 735 F. App'x 875, 881 (6th Cir. 2018).

In *Roskham Baking v. Lanham Machinery*, the Sixth Circuit held that a party had a "full and fair opportunity to litigate" an issue because it conducted discovery, sat for depositions, and argued its position in a reply brief. 288 F.3d 895, 905 (6th Cir. 2002). Similarly, in *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, the Court of Appeals determined that a party had a full and fair opportunity to litigate an issue when it "participated" in the proceeding, "enjoyed representation from counsel," and "presented opening and closing statements." 700 F. App'x 484, 492 (6th Cir. 2017). And in *GE Medical Systems Europe v. Prometheus Health*, the Court of Appeals concluded that a party had a full and fair opportunity to litigate because it was a party to the prior litigation and had an opportunity to raise arguments in opposition to summary judgment. 394 F. App'x 280, 281 (6th Cir. 2010).

As discussed above, Scott had a full and fair opportunity to litigate the issues implicated in both cases. In *Scott I,* Scott and Haier litigated the issue of his resignation, and Scott had a chance to rebut Haier's summary-judgment briefing regarding the fifth warning notice. Scott knew, based on the deposition and summary-judgment briefing, that the circumstances of his resignation were at issue.

9

Scott's participation in the first case provided him with a sufficient opportunity to litigate his case, which precludes its relitigation here. *See id.*

As to finality, the Sixth Circuit has clearly recognized that a summary-judgment order serves as a valid final judgment for issue-preclusion purposes. *See Stemler v. City of Florence*, 350 F.3d 578, 587 (6th Cir. 2003); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). No one disputes that here.

\* \* \*

All four prongs of the issue-preclusion test are satisfied. The "precise issue[s] raised in the present case" were "raised and actually litigated" in *Scott I*. *Cobbins*, 566 F.3d at 589. Judge Simpson determined that Scott's resignation was voluntary, that Haier did not take an adverse employment action against him, and that Scott lacked evidence of disparate treatment—all "necessary to the [decision in the] prior proceeding." *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003). Scott "had a full and fair opportunity to litigate" these issues. *Id.* And the prior proceeding resulted in a "final judgment on the merits." *Id.* Issue preclusion squarely forecloses Scott's attempt to relitigate those issues here.

### III. Failure to State a Claim

Even assuming Scott's "new" factual allegations weren't barred by Judge Simpson's ruling, they still would not support the discrimination and retaliation claims Scott asserts in this new proceeding. Because if a complaint contains a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," the district court must dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Read charitably, Scott contends that the imposition of the fifth warning, Scott's ultimate resignation, and retaliation for the first suit represent new factual allegations distinguishing *Scott II* from *Scott I*. *Scott II* Oral Arg. (DN 24 at 4:5–13). But the complaint fails to plead those purportedly new facts in a non-conclusory manner under Rule 8(a)(2). Scott hasn't put before this Court any "factual enhancement" demonstrating a plausible claim for relief—only assertions "merely consistent with . . . liability." *Iqbal*, 556 U.S. at 678 (quotation omitted).

In alleging discriminatory discharge, for example, the *Scott II* complaint (at ¶ 13) explains that "Caucasian employees would fail to wear proper PPE on a regular basis and would not be punished." This is the same allegation raised and rejected in *Scott I*, but the passage of time renders at least theoretically possible that something could've changed between the first and second suits. Set to the side the discovery that gave rise to summary judgment in *Scott I*, which (as discussed above) would suffice to foreclose this claim on preclusion grounds. Even focusing on the second

complaint alone, Scott alleges no examples or events or context to support the notion that the second suit should survive based on facts unavailable in the first suit: his claim that others weren't recommended for discipline, while he was discharged, rests on conjecture alone.

Indeed, counsel admitted that this allegation in *Scott II* was not supported by any well-pled facts; instead he requested discovery to see who those other employees were, and whether they actually had a disciplinary history. Oral Arg. at 9:11–24, 11:6–20. This puts the proverbial cart before the horse: a plaintiff may advance to discovery only *if*, and *after*, a complaint pleads "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007). The complaint here does not—and it is hard to see how it could allege more, given the preclusion issues and admissions discussed above. After all, Scott admitted he didn't know of any race-based differential treatment, involving his own African-American supervisor or others, as his lawyer also acknowledged at argument. Oral Arg. at 17:1–19 (discussing Scott Deposition at 139).

As to the "new" allegation of retaliation for filing *Scott I*, Scott provides no support for his assertion that the Haier decisionmakers involved in his discipline knew he had filed *Scott I*, or that the company imposed his fifth warning as retaliation for that protected conduct. Cabined by Judge Simpson's no-causation ruling with respect to the first four warnings, Scott alleges the purely chronological fact that Haier imposed Scott's fifth warning and second termination recommendation in February 2020, *see* (DN 22-5) at 1, three months *after* Scott filed his *Scott I* lawsuit, *see Scott II* Complaint ¶¶ 17–19; 34–35. He offers no other factual allegation that Haier intended to fire him because he exercised legal rights under Title VII.

Chronology does not equate to causation under these circumstances, however. The Sixth Circuit has "repeatedly cautioned against inferring causation based on temporal proximity alone." *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 471–72 (6th Cir. 2012). While a short period of time between protected conduct and discipline may be *relevant* to causation, such an inference typically is supported by other factual allegations supporting the connection. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010) ("[T]here are circumstances in which temporal proximity, when combined with other evidence . . . is enough to establish a causal connection."). Only rarely, when an adverse action "so closely follows the protected activity" that no other evidence of causation could even exist could "temporal proximity" by itself suffice to support causation. *Wasek*, 682 F.3d at 472 (discussing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525–26 (6th Cir. 2008)).

This is not one of those cases in which the only explanation for constructive discharge is Scott's filing of a lawsuit. Ninety-three days passed between Scott filing *Scott I* and the termination recommendation, and 114 days passed between the suit and Scott's resignation. *See Scott II* Complaint ¶¶ 17–18, 21. The passage of several

months, absent other corroboration, does not support an inference of retaliation. *See Wasek*, 682 F.3d at 471–72; *see also Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an in[f]erence of retaliation."); *McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir. 2004) (causation supported when "only 13 days" separated protected activity from adverse action); *Shefferly v. Health Alliance Plan of Mich.*, 94 F. App'x 275, 285 (6th Cir. 2004) (holding "the passage of less than three weeks" between employer's knowledge of protected activity and adverse action could give rise to an inference of causation).

More important, the record here is replete with facts that undermine any inference that the only explanation is retaliation. Scott's resignation followed a year-long history of violations and warnings. Before the events added in *Scott II* even began, Haier's HR director already had a basis for terminating Scott for reasons unrelated to his lawsuit—but decided not to. Fifth Warning Notice (DN 22-5) at 1 (Feb. 14, 2020); Scott Deposition at 182:25-183:3, 191–92. Then, three months later, he received a fifth warning and another termination notice. It is conceivable these events happened only because Scott sued. But that is only conjecture. Nothing in the record supplies a *factual* basis for causation. Left with a cluttered record of alternate causes over the course of a year, the Court cannot infer a race-based cause for his resignation based only on the passage of an additional three months. *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) (intervening "obviously nonretaliatory basis" for the adverse action amounted to evidence that negated temporal proximity).

Even reading Scott's pleadings in their most favorable light, therefore, they contain no factual allegations indicating that Haier imposed the fifth warning notice *because* Scott filed the *Scott I* lawsuit, or that the decisionmakers involved in Scott's termination knew the company had been served with his complaint. *Scott II* Complaint ¶ 35.

To be sure, Haier did not raise the factual inadequacy of the *Scott II* pleadings in its first or second motions to dismiss. *See* First Motion to Dismiss (DN 8) (claim-splitting), Second Motion to Dismiss (DN 14) (12(b)(6) motion asserting preclusion). Understandably, they focused instead on the allegations' overlap with those of *Scott I*. But that does not deprive the Court of its authority to examine the sufficiency of the allegations that would remain even on Scott's own narrow understanding of preclusion. "[T]he district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." 5B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 409 (3d ed. 2004).

Before dismissing a complaint in this fashion, a court need only grant the plaintiff notice and an opportunity to respond. *See Tingler v. Marshall*, 716 F.2d

1109, 1112 (6th Cir. 1983).[6] At the hearing on these motions, the Court walked through the pleadings in detail with Plaintiff's counsel, afforded Scott ample opportunity to address the pleading deficiencies and record limitations discussed above, and ensured it considered all counterarguments that counsel vigorously and cogently (if ultimately ineffectively) mustered in response. Oral Arg. at 15:13–25, 17:1–21:1. Given the lack of an effective response, this colloquy gave Scott ample notice and opportunity to respond, *see Tingler*, 716 F.2d at 1112, particularly considering that this ruling supplies only an alternative basis for dismissing this precluded lawsuit.

### ORDER

The Court grants Haier's second motion to dismiss (DN 14) this case with prejudice and denies the first motion to dismiss (DN 8) as moot.

Benjamin Beaton, District Judge
United States District Court

October 15, 2021

---

[6] *See also Bajenski v. Chivatero*, 818 F. Supp. 1083, 1085 (N.D. Ohio Jan. 7, 1993); *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 464 (5th Cir. 2018) (affirming district's court sua sponte dismissal if parties receive "notice of the court's intention and an opportunity to respond"); *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (holding *sua sponte* "dismissal under 12(b)(6) is not reversible error when it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing [him] an opportunity to amend [his] complaint would be futile" (quotation omitted)).